**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Lewis T. Babcock, Chief Judge**

Civil Case No. 04-cv-01295-LTB-CBS

BETTY GALLEGOS, BERTHA PACHECO,
LAURA REYES, MANUEL ARRAS,
DAVID ZUBIA, ANTONIO MEZA,
JESUS ARENIVAR, ALBA BARRIOS,
GLORIA CAMPOS, REYNEL CARMONA,
SYLVIA CRUZ, JESUS ESTRADA,
MARIA ISABEL FLORES, JORGE MARTINEZ,
MARIA MCREYNOLDS, IGNACIO RANGEL,
JUANA ROSALES, MARIA TOVAR,
ANTELMO ZUNUN, MARIA ALVA,
PETRONA COREAS, MARIA ESTEVEZ,
ALFREDO PINEDA, CARMEN LUNA,
PATTY LEHMKUHL, LUIS OCHOA,

> Plaintiffs,

v.

SWIFT & COMPANY,

> Defendant.

_____

**Order**
_____

This Order addresses two motions in limine to exclude expert testimony under Fed. R.

Evid. 702, one motion to strike evidence improperly submitted and two motions for summary

judgment under Fed. R. Civ. P. 56, in this suit by 26 plaintiff employees ("plaintiffs") against their

employer, Swift & Company ("Swift") for claims under the Americans with Disabilities Act, 42

U.S.C. § 12101, *et seq.,* and the Colorado Anti-Discrimination Act ("CADA"). Col. Rev. Stat. §

24-34-401, *et. seq.*   For the reasons stated below, the Swift's motion to exclude the testimony of

Gail Pickett is DENIED, Swift's motion to exclude the testimony of John Hughes is DENIED in

part, and GRANTED in part, Swift's motion to strike evidence submitted in support of plaintiffs' motion for summary judgment is DENIED, plaintiffs' motion for summary judgment is DENIED and Swift's motion for summary judgment is DENIED in part, and GRANTED, in part.

## I.  BACKGROUND

This case stems from employment actions by Swift at several meat packing plants in Greeley, Colorado. Swift purchased these plants in September 2002 from ConAgra corporation. Swift, after assessing the staffing and productivity of these plants, concluded that about 179 employees with permanent medical restrictions needed to be moved to different positions. Swift contends it made these changes because the employees held positions that were non-essential make-work, that were "light-duty" positions intended only for temporarily injured employees, or because the employees' medical restrictions rendered them unable to do the jobs as required. In January of 2003 Swift implemented a new policy which eliminated some positions, limited light-duty positions only to employees with temporary (less than six month) medical  restrictions and removed employees from jobs inconsistent with their medical restrictions. Swift found other positions, consistent with their medical restrictions, for all but 29 of the 179 employees impacted by this policy. These 29 employees were placed on unpaid medical leave of absence. The 26 plaintiffs in this case are all part of this group.

The plaintiffs allege that Swift did not provide them reasonable accommodation as required by the ADA. Specifically, plaintiffs contend that they are disabled, that they were qualified for the positions at the time they were placed on leave and that Swift did not let them remain in their current positions or reassign them to other vacant positions available at the time.

The plaintiffs seek summary judgment that they are disabled as a matter of law and that Swift failed to accommodate their disabilities. Swift seeks summary judgment that the plaintiffs are not disabled. Swift has also filed motions to suppress the reports of plaintiffs' two expert witnesses and to exclude some portions of evidence submitted by plaintiffs in their motion for summary judgment. I will first address the motions in limine before considering the motion to exclude evidence and the motions for summary judgment.

## II.  MOTIONS IN LIMINE

A.    Standard of Review

Under Fed. R. Evid. 702, a trial judge acts as a gatekeeper with regard to the admissibility of expert opinions. *Ralston v. Smith & Nephew Richards, Inc.,* 275 F. 3d 965, 969 (10th Cir. 2001). I must determine whether a proffered witness is qualified, whether his testimony is reliable, and whether it is relevant to the issue at hand. *See generally* Fed. R. Evid 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-593 (1993). This analysis applies to technical as well as to scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999). Determination of the admissibility of an expert opinion is not subject to rigid criteria, and is case specific, granting me "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152. The proponent of the evidence bears the burden of establishing that its proffered expert's testimony is admissible. *Ralston,* 275 F.3d at 970 n.4.

1.    Qualifications

I determine whether an expert is qualified by "comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness'

testimony." *Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir. 1990). Here, Swift does not

challenge the qualifications of the two proposed expert witnesses.

       2.      Reliability

      To be admissible, a qualified expert witness' testimony must be "based upon sufficient

facts or data," "the product of reliable principles and methods," and the expert must apply these

principles and methods "reliably to the facts of the case." Fed. R. Evid. 702. Admissible expert

testimony must be grounded in "the methods and procedures of science rather than subjective

belief or unsupported speculation." *Hollander v. Sandoz Pharmaceuticals Corp.,* 289 F.3d 1193,

1205 (10th Cir. 2002). The proponent "need not prove that the expert is indisputably correct or

that the expert's theory is 'generally accepted' in the scientific community. Instead, the [party]

must show that the method employed by the expert in reaching the conclusion is scientifically

sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability

requirements." *Mitchell v. Gencorp, Inc.,* 165 F.3d 778, 781 (10th Cir. 1999). However, a court

may reject expert testimony that is "connected to existing data only by the *ipse dixit* of the

expert." *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997).

       3.      Relevance

      To be admissible, expert testimony must also be relevant to the task at hand. *Bitler v. A.O.*

*Smith Corp.*, 400 F. 3d 1227, 1234 (10th Cir. 2005) (*quoting Daubert,* 509 U.S. at 597.) "A trial

court must look at the logical relationship between the evidence proffered and the material issue

that evidence is supposed to support to determine if it advances the purpose of aiding the trier of

fact." *Id.* This is also characterized as the "fit" test, which requires expert testimony to be

"sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."

*Daubert,* 509 U.S. at 591.

4.      On the Record Findings

In ruling on the admissibility of expert testimony, a district court must "vigilantly make detailed findings to fulfill the gatekeeper role crafted in *Daubert.*" *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1226 (10th Cir. 2003).  Accordingly, I must carefully describe and analyze the issues presented by both parties regarding the proffered expert testimony and make a complete record of my findings and conclusions.

B.      Discussion

Swift challenges the expert testimony of plaintiffs' proposed expert witnesses, Dr. John Hughes, a physician and Gail Pickett, a vocational consultant.

1.      John Hughes

Hughes provides individual expert reports for each plaintiff, based on his assessments of Swift's records of each plaintiff's medical restrictions and medical history. In each report, Hughes summarizes the plaintiffs' injuries and impairments, and offers his opinion as to how their impairments compare to the general population in their claimed impaired life activity or activities. For example, if an individual plaintiff has, according to Swift's records, a ten pound lifting restriction, Hughes states that this restriction places the plaintiff within a certain percentile of lifting ability compared to the overall population. Plaintiffs appear to offer Hughes' testimony mainly to provide this comparative information.

Swift offers several reasons why Hughes' testimony fails to meet the relevance and reliability requirements of Rule 702 and *Daubert.* Swift contends that Hughes did not actually examine the plaintiffs, that their medical conditions have changed since the time of their

examinations and that Hughes relies exclusively on the reports of other doctors.

The flaw in these arguments is that the information on which Hughes relies was the same information Swift relied upon when it placed these employees on medical leave. One of plaintiffs' legal theories is that they are disabled because Swift had a record of their impairment or regarded them as impaired. 42 U.S.C. § 12102(2)(b) and (c). Under these theories, Hughes' reliance on Swift's medical records, even if outdated, and his failure to personally examine the plaintiffs, are not fatal.

The more important flaw in Hughes' report is that it provides no basis for his conclusions regarding the plaintiffs' percentile comparison to the general population. Hughes offers no data, no source of information and no demographic evidence to back up his bald assertions. This is precisely the kind of *ipse dixit* of the expert that does not meet the standards of Rule 702 or *Daubert. General Electric,* 522 U.S. at 146. I conclude that Hughes' statements comparing each plaintiff to the general population is inadmissible. The remainder of Hughes' reports, however, are admissible, since they remain relevant and reliable in support of plaintiffs' "regarded as" theory of disability.

     2.    Gail Pickett

Gail Pickett is a vocational consultant who prepared a report on each plaintiff. Her reports review each plaintiff's work history both prior to and during their time at Swift, the medical restrictions imposed on them at Swift, and their post-Swift work history. Pickett attempted to assess the physical demands of the position each plaintiff held prior to being injured. Based on this information, where it existed, and each plaintiff's self-reported prior employment history, Pickett describes the kinds of work each plaintiff was capable of prior to being injured. Pickett compares

this to the work each plaintiff is capable of under their Swift-imposed work restrictions. Pickett uses the categories of the U.S. Department of Labor ("DOL") Dictionary of Occupational Titles (DOT), "very heavy," "heavy", "medium," "light" and "sedentary," and opines about which categories of work each plaintiff can no longer perform due to their injuries. In some instances, Pickett addresses the kinds of jobs each plaintiff is eligible for based on their education and vocational training, and comments on the extent to which the plaintiff's impairment precludes them from these classes of jobs.

Swift argues that Pickett's reports are inadmissible under *Daubert* because they are neither relevant nor reliable. The Pickett reports seek to demonstrate that the plaintiffs are substantially impaired in the major life activity of working. Swift states that the Pickett reports fail to address several key elements of the ADA definition of a substantial impairment in the ability to work, including the reasonable geographic area to which each plaintiff has reasonable access, the individual plaintiff's particular skills and education, and the number and types of jobs from which each plaintiff is excluded. 29 C.F.R. § 1630.2(j)(3)(ii).  Since the Pickett reports do not satisfy these elements, the report is not connected to the facts at issue and is inadmissible.

Swift's argument misapprehends the nature of the "fit" test under Rule 702.  The fit test is intended to ensure that a scientific method valid for a specific purpose is not used for other, unrelated purposes. *Daubert,* 509 U.S. at 591.  The fit test does not measure whether expert testimony satisfies a party's substantive legal burden; it only ensures that there is a "valid scientific connection to the pertinent inquiry." *Id.* at 592. Swift does not argue that  Pickett has improperly used or applied scientific methods. Nor does Swift contend that the issue the Pickett reports address – whether plaintiffs are substantially impaired in their ability to work – is not an issue in

7

dispute in this case.

Rather, Swift argues that Pickett's reports do not satisfy the elements of plaintiffs' ADA claims. But this is beyond the scope of Rule 702. As *Daubert* states "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. Swift's contention is more properly an argument in a Fed. R. Civ. P. 56 motion for summary judgment. Significantly, almost every case Swift cites concluded that the expert reports were flawed because the evidence they presented was insufficient to meet their legal burden under Rule 56, not because they were inadmissible under Rule 702.  Accordingly, Swift's motion in limine to exclude this report fails.

### III.   MOTION TO STRIKE EVIDENCE

Swift moves to strike two categories of evidence plaintiffs submitted with their summary judgment motion as not in accord with Rule 56 or as inadmissible hearsay. Plaintiffs have offered documentary evidence consisting of medical reports and workers compensation claim records, Swift business records, correspondence, request for leave of absence forms, and others. Plaintiffs have also offered the expert reports of Hughes and Picket.

Swift argues that the documentary evidence and the expert reports were not properly authenticated under Fed. R. Civ. P. 56(e). Rule 56(e) requires that in a motion for summary judgment, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Additionally, all documents must be "sworn or certified." Courts need not consider evidence that does not conform to these requirements. *Carmona v. Toledo,* 215 F.3d 124, 131 (1st Cir. 2000).

I do not agree that this evidence is inadmissible. Plaintiffs have provided affidavits from Hughes and Picket in their response to this motion stating that each expert did in fact write the expert reports attributed to them, and that the reports "correctly and accurately" contain their opinions. This is sufficient to cure any deficiency in the original filings.

While it is true that the documentary evidence does not contain an affidavit or sworn statement, this evidence consists entirely of Swift's own records that plaintiffs obtained from Swift during discovery. In many instances, these documents are signed by Swift company officials or are on Swift company letterhead. Swift does not deny that these records are from their own files, and does not challenge the authenticity or pedigree of these records. Under these circumstances there is "sufficient circumstantial evidence to support (their) authenticity." *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1423 (10th Cir. 1991). Documents obtained from an opponent in discovery do not have to meet the requirements of Rule 56(e). *Anderson v. Cramlet,* 789 F.2d 840, 845 (10th Cir. 1986). *See also Seeds v. Lucero,* 177 F.Supp.2d 1261, 1266 n.1 (D.N.M. 2001)(collecting cases).

Swift also argues that these records constitute inadmissible hearsay. Again, Swift does not deny that these records were obtained from them during discovery, and are regularly kept by Swift. As such, they are business records, and fall under the business record exception to hearsay under Fed.R.Evid. 803(6). *See Denison,* 941 F.2d at 1423. While the plaintiffs have not provided an affirmative statement from a Swift agent stating that these records are what they purport to be, under the circumstances this is not a fatal flaw. As discussed above, these records were provided to plaintiffs by Swift, which constitutes "implicit authentication." *In re Greenwood Air Crash,* 924 F. Supp. 1511, 1514 (S.D. Ind. 1995). Also, these are records of a party offered against that

party, so they qualify as party admissions and are not hearsay under Fed. R. Evid. 801(d)(2)(A).

*See Bryant v. Farmers Ins. Exchange,* 432 F.3d 1114, 1123 (10th Cir. 2005).

Rejecting or accepting evidence in a summary judgment motion is discretionary with the district court. *Roe ex rel. Roe v. Keady,* 329 F.3d 1188, 1194 (10th Cir. 2003). For the reasons stated above, I exercise my discretion to consider these documents in plaintiffs' motion for summary judgment.

### IV.   MOTIONS FOR SUMMARY JUDGMENT

A.   <u>Standard of Review</u>

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper. *Id.* at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson,* 477 U.S. at 250. In considering a motion for summary judgment, I view all evidence in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 252.

10

B.      Discussion

Plaintiffs seek summary judgment that they are disabled under the ADA, and that Swift

failed to reasonably accommodate them as required by the ADA. Swift seeks summary judgment

that plaintiffs are not disabled. So the issue of whether plaintiffs are disabled within the ADA is

the subject of cross-motions for summary judgment, while the issue of whether Swift failed to

accommodate plaintiffs is the subject only of plaintiffs' motion for summary judgment.

1.      Are Plaintiffs Disabled?

An individual is disabled under the ADA if he (A) has a "physical or mental impairment

that substantially limits one or more major life activities;" (B) has "a record of such an

impairment," or (C) is "regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiffs

assert they are disabled under all three definitions.

a.      Actual Impairment

To satisfy the definition of disability, an individual must show that he is impaired, that the

impairment affects a recognized major life activity, and that the impairment is substantial. *Thalos

v. Dillon Companies, Inc.,* 86 F. Supp.2d 1079, 1083 (D.Colo. 2000). Swift concedes, at least for

the purpose of this motion, that all plaintiffs are impaired, and that the impairments affect major

life activities legally cognizable under the ADA. The core dispute in these motions is whether

plaintiffs' impairments "substantially limit" these major life activities.  This inquiry is fact-sensitive

and for the trier of fact to decide. *Bristol v. Bd. of County Commissioners of County of Clear

Creek,* 281 F. 3d 1148, 1160 (10th Cir. 2002), *vacated in part on other grounds,* 312 F.3d 1213

(10th Cir. 2002).

An impairment "substantially limits" a major life activity when the individual is "unable to

11

perform a major life activity that the average person in the general population can perform" or is

"significantly restricted as to the condition, manner or duration under which an individual can

perform a particular major life activity as compared to the condition, manner or duration under

which the average person in the general population can perform that same major life activity." 29

C.F.R. § 1630.2(j).

The threshold for establishing a substantial limitation is a "high bar." *Thalos,* 86 F.

Supp.2d at 1083. The terms of the ADA are "interpreted strictly to create a demanding standard

for qualifying as disabled." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197

(2002). "The fact that a person with an impairment performs her major life activities differently

than the rest of the population will not suffice to establish disability under the ADA." *Thalos,* 86

F. Supp.2d at 1083. The ADA "concerns itself only with limitations that are in fact substantial."

*Albertson's Inc., v. Kirkingburg,* 527 U.S. 555, 565 (1999). Also, a court must consider

mitigating efforts in determining if an individual is disabled. *Id.*

A court determines if a limitation is substantial on an individualized, case by case basis.

*Albertson's,* 527 U.S. at 566. The critical question is not the name or even the nature of the

impairment, but "the effect of that impairment on the life of the individual." *Id.* The ADA requires

that plaintiffs' "prove a disability by offering evidence that the extent of the limitation, in terms of

their own experience . . . is substantial." *Id.* at 567. However, the ADA does not change the

normal standard that applies in motions for summary judgment. The plaintiff must proffer

evidence from which a reasonable inference can be drawn that an activity is substantially limited.

*Gillen v. Fallon Ambulance Service, Inc.,* 283 F.3d 11, 24 (1st Cir. 2002). While this evidence is

almost always "unique to that impairment and to the individual involved," it "need not necessarily

be composed of excruciating details as to how the plaintiff's capabilities have been affected by the impairment." *Id.* Moreover, some impairments by their very nature "invariably cause a substantial limitation of a major life activity." *Albertson's,* 527 U.S. at 566.

> b.    Record of an Impairment

An individual can also qualify as disabled if he has a record of an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(B). This provision is intended to protect individuals who are not presently disabled but who may have been discriminated against because of a history of a disability, or because they have been misclassified as disabled. 29 C.F.R. § 1630, App.  The impairment indicated in the employer's record must be substantially limiting; it must show "an impairment that would substantially limit one or more of the individual's major life activities." *Id. See also Sorenson v. University of Utah Hospital,* 194 F.3d 1084, 1087 (10th Cir. 1999).

> c.    Regarded as Disabled

An individual can also qualify as disabled if he is regarded as disabled. 42 U.S.C. § 12102(2)(c). An individual qualifies under this prong either by showing that an employer "mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities," or that an employer "mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999). In either case, an employer must "entertain mis-perceptions about the individual." *Id.*

Here, there is no dispute that Swift's actions were based on the medical restrictions imposed by company doctors. Swift, relying on *Rakity v. Dillon Companies, Inc.,* 302 F.3d 1152,

13

1162-1163 (10th Cir. 2002), contends that as long as it relied in good faith on the restrictions in the medical reports it is not liable under a "regarded as" theory. I disagree.  An employer is liable under this theory even if the employer's misperception is innocent, based on a mistake of fact or on a mistaken interpretation of a medical report. *Buskirk v. Apollo Metals,* 307 F.3d 160, 167 (3d Cir. 2002). *Rakity* states only that an employer is not liable under this theory when it relies on a physician's accurate medical restrictions that by themselves do not constitute a substantial limitation. 302 F.3d at 1163. *Rakity* does not address a situation where an inaccurate medical restriction does constitute a substantial limitation. Accordingly, to qualify under this prong plaintiffs must show that 1) Swift's medical records documented an impairment that qualifies as substantial, 2) these reports were erroneous or Swift misread them, and 3) that Swift relied on these reports in placing plaintiffs on medical leave.

> d.      Substantial Impairments – In General

I first must clarify which substantial impairments are at issue in this case. In plaintiffs' summary judgment motion all 26 plaintiffs claim substantial impairments in the life activities of lifting and working. For reasons stated in greater detail below, the life activities of working and lifting are most critical to these motions, so I will analyze issues common to the claims of all plaintiffs in regard to these activities before addressing each individual plaintiff's claims.

Some plaintiffs also claim impairments in additional life activities. Swift's motion for summary judgment addresses several life activities that plaintiffs claim in their responses to interrogatories, but neither claim in their own motions nor address in response to Swift's motion. Plaintiffs' response to Swift's motion addresses only the life activity of lifting, but requests the opportunity to brief additional life activities in the event that the Court finds for Swift on the life

14

activity of lifting. A plaintiff stating a claim under the ADA "must articulate with precision the impairment alleged and the major life activity affected by that impairment." *Poindexter v Atchison, Topeka & Santa Fe Ry.,* 168 F.3d 1228, 1232 (10th Cir. 1999). In a motion for summary judgment when the non-moving party does not respond, the non-moving party waives its right to do so, and I appropriately "accept as true all material facts asserted and properly supported" in the movant's motion. *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002). Accordingly, for the purposes of these motions for summary judgment I will consider only the life activities plaintiffs claim either in their own motion for summary judgment or in response to Swift's motion.

Swift also challenges, in regard to all of plaintiffs' claims, plaintiffs' reliance on medical records and reports, some prepared and relied upon by Swift in placing the plaintiffs on medical disability, and some developed by plaintiffs' experts, derived essentially from analyzing Swift's medical records. Swift, citing *McCleary* v. *National Cold Storage, Inc.,* 67 F. Supp.2d 1288, 1300 (D. Kan. 1999), argues that a medical diagnosis by itself is insufficient to establish a substantial impairment. However, I do not read *McCleary,* or any other authority, as stating that I may not consider medical reports along with other evidence on the record, provided it is admissible evidence. Since I have already rejected the comparative evidence offered by plaintiffs' medical expert Dr. Hughes, I do not consider this evidence in addressing the motions for summary judgment. I will consider the remaining evidence.

      i.      The Major Life Activity of Lifting

Every plaintiff claims a substantial limitation in lifting. Of the 26 plaintiffs, several have a lifting restriction of less than fifteen pounds; the others have somewhat greater weight limits. In

the Tenth Circuit, a plaintiff's permanent lifting restriction of fifteen pounds is sufficient to defeat

summary judgment, even absent evidence comparing the individual to the ability of the general

population, as prescribed in 29 C.F.R. § 1630.2(j)(1). *See  Lowe v. Angelo's Italian Foods*, *Inc.,*

87 F.3d 1170, 1174 (10th Cir. 1996) and *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237,

1240 (10th Cir. 2001).  Such a restriction is "substantially limiting on its face" and creates a

"genuine issue of material fact with respect to whether (plaintiff's) impairment substantially

limited the major life activity of lifting." *Lusk,* 238 F.3d at 1240.

For the plaintiffs with restrictions of 15 pounds or less, whether they are substantially

impaired in lifting reduces to a duel over the meaning of *Lowe* and *Lusk.* Plaintiffs contend that a

lifting restriction of fifteen pounds or less entitles them to summary judgment under *Lowe* and

*Lusk.* However, these cases establish only that such a restriction is sufficient to <u>defeat</u> summary

judgment for the employer, not that it is sufficient to <u>grant</u> summary judgment for the employee.

*See Lowe,* 87 F.3d at 1172; *Lusk,* 238 F.3d at 1240. Accordingly, plaintiffs' motion for summary

judgment on this issue cannot succeed merely by citing a lifting restriction of less than fifteen

pounds and invoking *Lowe.*  For each plaintiff, Swift has identified in the record some evidence

that plaintiffs do not suffer from a substantial impairment in their ability to lift despite their lifting

restriction. This is sufficient to raise a fact question regarding plaintiffs' ability to lift, and thus

defeats plaintiffs' motion for summary judgment on this issue.

Conversely, Swift contends that these cases only hold that a fifteen pound lifting

restriction defeats summary judgment when the record contains no evidence showing how the

lifting restriction impacts the plaintiff's life. Where, such as with plaintiffs here, the record

contains evidence that there has not been a substantial impact on their life, summary judgment is

inappropriate. In fact, in *Lowe* the defendant argued specifically that summary judgment was proper because the plaintiff offered no evidence "comparing her ability to lift with the ability of the average person" and that she had failed to demonstrate "the impact of her condition on her life away from work" *Lowe,* 87 F.3d at 1174. The Court rejected this argument, concluding that while "more specific evidence on these issues will be helpful to the trier of fact on remand," the plaintiff had "presented sufficient evidence to withstand summary judgment." *Id.* Therefore, applying the doctrine of *Lowe,* I deny Swift's motion for summary judgment for the 19 plaintiffs with a lifting restriction of less than fifteen pounds. For the remaining plaintiffs, I consider their lifting restrictions and the other evidence they proffer as to how their impairments have affected their ability to lift.

I note that I will interpret *Lowe* narrowly. *Lowe* establishes that an overall lifting limit of 15 pounds is sufficient to defeat summary judgment. It does not address limits on only a single arm. Several plaintiffs have limits confined to one arm of less than fifteen pounds. This is insufficient to qualify as a facial limit under *Lowe.* Also, the facial restriction in *Lowe* was from the plaintiff's private doctor and applied to her ability to lift generally. *Id.* at 1172. The restrictions at issue here are from the company physicians imposing limits on the jobs an employee may perform. None of these restrictions purport to apply to any aspect of the plaintiffs' lives other than work. It is unclear whether this kind of restriction properly falls under the *Lowe* facial limitation. But, since in a motion for summary judgment I make every reasonable inference in favor of the non-moving party, I will assume that *Lowe* applies to these medical restrictions.

Even where plaintiffs can defeat summary judgment citing their lifting restrictions, this will be insufficient to meet their burden of persuasion at trial. All plaintiffs, in order to show a

17

substantial limitation in their ability to lift, will have to demonstrate by a preponderance of the evidence that their inability to lift has substantially impacted their lives in some manner.

ii.     The Major Life Activity of Working

All plaintiffs claim to be substantially impaired in the life activity of working. An individual is substantially impaired in the ability to work if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I). "To be substantially limited in the major life activity of working. . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton,* 527 U.S. at 492. "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available. . . (or) . . . if a host of different types of job are available, one is not precluded from a broad range of jobs." *Id.*

Factors courts "may consider" to determine if an individual is substantially limited in the activity of working include: "(a) the geographical area to which the individual has reasonable access, (b) the job from which the individual has been disqualified because of an impairment and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (c) the job from which the individual has been disqualified because of an impairment and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes)." 29 C.F.R. § 1630.2(j)(3)(ii). In a motion

for summary judgment, the burden is on the plaintiff to show a "significant restriction" in his

ability to work. *Bolton v Scrivener,* 36 F.3d 939, 944 (10th Cir. 1994).

The guidance of the Equal Employment Opportunity Commission (EEOC) discussing

these definitions states that the terms "number and types of jobs" and "number and types of other

jobs" do not impose "an onerous evidentiary showing." A plaintiff need only present "evidence of

general employment demographics and/or recognized occupational classifications that indicate the

approximate number of jobs (e.g. "few," "many," "most") from which an individual would be

excluded because of an impairment." 29 C.F.R. § 1630, App.

Plaintiffs rely almost exclusively on the Pickett reports to support their claim of substantial

impairment in the ability to work. Swift contends that the Pickett reports are insufficient to defeat

summary judgment because they do not address the number of jobs from which plaintiffs are

excluded, they do not state with sufficient specificity the kinds or classes of jobs from which

plaintiffs are excluded, they do not evaluate the plaintiffs' specific vocational or educational

training and they do not state a particular geographic job market that is the basis for her

conclusions. Since competing views of these reports is ultimately dispositive of whether plaintiffs

survive summary judgment on this issue, I will explore these issues in some detail.

Pickett addresses each plaintiff's impairment, the DOT categories of work they were

physically capable of performing prior to their injury and the DOT categories from which they are

excluded now. While Pickett does not attempt to provide a specific number of jobs, she does state

that each plaintiff is excluded from "access to jobs," "most jobs" or "many jobs" in one or more

DOT categories, such as "heavy," "medium," or "light." These characterizations, however

general, are consistent with the language of the EEOC guidance.  In some cases, Pickett goes

19

further and describes specific kinds of occupations the plaintiff can perform, in light of their education and vocational training.

Swift construes Tenth Circuit authority to require plaintiffs to specify the actual number of jobs they are disqualified from. I disagree. In *Bolton,* where the plaintiff only provided evidence about his impairment but <u>no</u> evidence about his exclusion from other jobs, summary judgment for the defendant was appropriate. 36 F.3d at 944. In *Bristol*, the Tenth Circuit found that evidence similar to that provided here was insufficient to grant plaintiff judgment as a matter of law. 281 F.3d at 1162-1163. The Court did not find that this evidence entitled the defendant employer to summary judgment, and ordered the jury to consider this issue on remand. *Id.*

Swift also argues the broad DOT categories Pickett relies on are too general to show a substantial limitation. These classifications, Swift contends, refer only to the strength necessary to do jobs and does not describe either a "class of jobs" or a "broad range of jobs." Swift over-states plaintiffs' burden. The EEOC Interpretive Guidance accompanying the ADA regulations state, as an example, "an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working . . . This would be so even if the individual were able to perform jobs in another class." 29 CFR § 1630, App. Similarly, the Seventh Circuit has found that a physician's restrictions prohibiting a plaintiff from overhead work, heavy lifting and pushing or pulling out from his body "might apply to a broad range of jobs, and are more than job specific," and thus defeat summary judgment even absent more specific analysis of the jobs from which he was excluded. *Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 911 (7th Cir. 1996). In light of this authority, Pickett's conclusions are not impermissibly general.

20

Swift also faults Pickett for failing to identify any specific job market that as the basis for her analysis. For some plaintiffs the Pickett report states explicitly that she analyzes the United States job market as a whole, and for other plaintiffs she does not specify any geographic area. Plaintiffs in their brief state that the geographic area Pickett used for all plaintiffs, even those where it is not stated explicitly, is the United States as a whole.  Making all reasonable inferences for the plaintiffs, as I must in a motion for summary judgment, I find that the Pickett report analyzed the plaintiffs' access to work in the United States economy as a whole.

Swift contends that even if Pickett did use the nation as a whole, the ADA requires a comparison to the local job market. Swift does not cite any Tenth Circuit authority to support this proposition, and the authority Swift cites from other jurisdictions states only that it is appropriate to make this comparison, not that it is required. Swift cites no case, and I am not aware of any, that holds that the national economy cannot be a basis for comparison for this purpose. I note that the EEOC regulations list the comparison to a geographical area as among the factors that "may" be considered, not that must or even should be considered.  Moreover, in at least one circuit a plaintiff can defeat summary judgment without reference to any geographic area. *See Cochrum,* 102 F.3d at 911.  Swift argues that even if the national economy can be a valid comparative benchmark, the plaintiffs here have not demonstrated that they have "reasonable access" to the national job market. At least some plaintiffs did look for work out of state or held prior jobs in other states. In today's interconnected economy, I cannot on a motion for summary judgment state that it is beyond dispute that the plaintiffs could not seek jobs nationally.

Beyond contesting the Pickett reports, Swift also argues that the undisputed fact that plaintiffs were offered other jobs by Swift, or in some cases returned to work at Swift, or found

other jobs while they were on medical leave of absence, demonstrates that the plaintiffs were not substantially limited in their ability to work. However, just as the inability to work in a single job or even a narrow category of jobs does not amount to a substantial limitation, the ability to find a single job does not prove beyond dispute that an individual is not substantially limited. This evidence, while probative of the ultimate question of whether plaintiffs are substantially limited in their ability to work, does not allow Swift to prevail on summary judgment.

I therefore conclude that the Pickett reports for each plaintiff have presented sufficient information to raise a fact question on whether plaintiffs are substantially limited in their ability to work.  At the same time, the Pickett reports do not satisfy plaintiffs' burden on their own motion for summary judgment. The Pickett reports do not establish beyond question that plaintiffs are substantially limited in their ability to work.  The various issues Swift raises, while not sufficient to grant Swift summary judgment, certainly raise sufficient doubt to deny summary judgment to plaintiffs. To prevail at trial, plaintiffs will have to provide far more detail about the nature and kinds of jobs they are excluded from, the nature of their effort to search for jobs and the geographic area which they have reasonable access to, in order to show that they are actually impaired in their ability to work.

e.      Individual Plaintiffs

I now consider the impairments in specific life activities claimed by all plaintiffs individually. Since I have already concluded that the Pickett reports are sufficient to create a fact dispute on plaintiffs' ability to work, I do not consider this life activity below.

Betty Gallegos

Gallegos claims substantial impairments in the major life activities of lifting and working.

Gallegos has a ten pound lifting restriction, which qualifies as a facial limitation on her ability to lift under *Lowe*. Gallegos has thus raised a fact issue regarding her ability to lift sufficient to defeat summary judgment.

Bertha Pacheco

Pacheco claims to be substantially impaired in the major life activities of working lifting and reaching. Her medical restriction prevents her from lifting more than ten pounds. This is sufficient to deny Swift's motion for summary judgment on this life activity under *Lowe*. Pacheco also is restricted from frequent reaching with either arm. Pacheco contends that her overall restrictions impact her life in the following ways: she can only drive for short distances, she cannot carry or play with her grandchildren, it is "very hard" for her  to open cans or use a knife to cook, she cannot cook as well or as often as she used to, opening doors is difficult, using her house keys is difficult, vacuuming and mopping are harder, and writing causes her pain. At the same time, Pacheco is currently working as a waitress at a restaurant and is able to clear dishes and reach across tables to collect dishes and wipe off the table. She is able to clean booths by climbing onto the bench to reach the back of the table. Based on this record, Pacheco has not shown that she has a substantial impairment in reaching. Because Pacheco has not shown that her injuries constitute a substantial impairment in any activity other than lifting, her "record of" claim also fails. Since she does not show that Swift's perception of her impairment was inaccurate, her "regarded as" claim fails as well.

Laura Reyes

Reyes claims to be substantially impaired in working, lifting and reaching. Her medical restrictions prevent her from lifting more than ten pounds with her left arm. While she claims to

have a further restriction limiting her to 20 pounds occasional lifting with both arms, the record contains no document showing such a medical restriction prior to Reyes' placement on medical leave. Swift's notice to Reyes placing her on leave cites the 10 pound left arm lifting restriction but does not cite any 20 pound restriction. Under *Lowe*, this restriction is not a facial substantial limitation and does not, by itself, defeat summary judgment. Reyes' does not provide any other specific evidence of her inability to lift, and states that she is able to lift without restriction with her right hand. On this evidence, Reyes has not presented a fact in dispute to show she has a substantial limitation in her ability to lift.

Reyes does not have a specific medical restriction on reaching, but her medical report of January 2001 does state "Occasional use of the left arm above shoulder level." Reyes states that she can raise her right hand without difficulty and, although there is some trouble with her right hand, she can raise it above her head. Reyes also states showering and hose work take more time, "cooking is difficult," "doing laundry and folding clothes is very difficult," and "dressing myself is difficult." It is unclear whether or to what extent these are due to problems reaching. Even assuming her reaching impairment is making these activities more difficult, this is insufficient to constitute a substantial impairment. Reyes fails to defeat summary judgment on this claim.

Reyes also claims that Swift's records of her restrictions support a record of theory, but since these records by themselves do not show a substantial impairment, this argument also fails. Also, Reyes does not show that Swift erroneously regarded her as disabled, since the lay-off letter of March 17, 2003 accurately stated her medical restrictions, and Reyes has not offered evidence showing that these were inaccurate.

<u>Manuela Arras</u>

Arras claims to be substantially limited in the life activities of working, lifting and reaching. Arras has a medical restriction that prevents her from lifting more than ten pounds, which constitutes a facial limitation under *Lowe*. While Swift contends that this facial restriction is belied by Arras' own testimony that she can lift up to forty pounds, a small suitcase, a vacuum cleaner, a gallon of milk and a sofa, this argument does not address the fact that these restrictions were imposed by Swift's physician and were the basis for placing Arras on medical leave. So the ten pound limitation, even if it was not accurate when Arras was placed on leave, can be the basis for a claim under the "regarded as" theory. This is sufficient to defeat summary judgment.

Arras claims to be substantially limited in the ability to reach, and cites her medical restriction barring her from reaching above the shoulder. However, Arras can clean house, shop, and put away groceries, although some of these tasks take longer than before she was injured. She can reach her arms across, but can only reach her arms above her head "with difficulty." She currently works part time cleaning houses and painting. This evidence does not show a substantial impairment in reaching. Arras contends also that the medical records of her impairments show that Swift had a record of her disability, but the record of an above waist work restriction does not, by itself, show a substantial impairment in reaching. The record also does not support Arras' claim that Swift regarded her as disabled. When Swift placed her on leave March 17, 2003, Swift stated that she was on medical restrictions of "no above shoulder lifting." Arras' medical report of March 11, 2003 prohibits her from "above waist work."  There is no evidence showing that Swift was mistaken about her restrictions when it placed her on leave.

David Zubia

Zubia claims to be substantially limited in the life activities of working, lifting and reaching. Zubia has a medical restriction that prevents him from lifting more than ten pounds, which constitutes a facial limitation under *Lowe*. Swift contends that this restriction is limited to his right arm, and the record is inconsistent on this point. Zubia's 1997 medical report shows a ten pound restriction without reference to one or both arms, his 2000 examination with Dr. Wunder reports the ten pound restriction limited to the right arm and in his deposition testimony Zubia states that his lifting restriction is limited to his right arm. His deposition testimony also states that he cannot lift more than fifteen pounds, and he cannot lift a vacuum cleaner or a chair. Also, Swift's letter to Zubia placing him on medical leave states that he has a permanent medical restriction of "maximum ten pounds" without reference to one or both arms. This evidence is sufficient to raise a fact question as to whether Zubia is substantially impaired in lifting, or whether Swift regarded him as being unable to lift. .

Zubia is also under a medical restriction limiting him to "occasional reaching" and "no use above shoulder." However, Zubia does not report any specific impact on his life from these restrictions. He can reach out his arms in front of him and to the side, he can change a light bulb, and he held a construction job during his lay-off that involved laying sod. The only specific impact of his lifting restriction that Zubia reports is that it takes him longer to get dressed and his shoulder hurts when he pulls a shirt over his head. Zubia has not presented an issue of fact on his ability to reach.

Antonio Meza

Meza claims substantial impairment in the activities of working and lifting. His medical

restriction limits him to lifting no more than five pounds on his right arm. Meza has stated that despite this restriction he can lift 20-25 pounds using both hands. He also asserts that his condition has improved and that he can lift more weight since he was placed on medical leave April 1, 2003. Meza contends that he has a record of a disability and was regarded as disabled. However, under both theories there needs to be some evidence of a substantial impairment in lifting. While under *Lowe* a general 15 pound restriction on both hands is sufficient to deny summary judgment, here Meza only has evidence that Swift regarded him as having a one hand five pound limit, and there is no other evidence of his record of disability or of how Swift regarded him. Moreover, Meza offers no evidence that Swift's perception of his impairment was erroneous. Absent more, this five pound one hand restriction is insufficient to create an issue of fact on a record of or regarded as theory of disability.

Jesus Arenivar

Arenivar claims substantial impairments in the activities of working and lifting. Arenviar invokes the theory of actual impairment and regarded as impaired in lifting. His medical restriction limits him to ten pounds in one hand, but in his deposition Arenivar states that he can lift as much as 60 pounds. This does not constitute an actual impairment. While Swift did regard him as unable to lift more than ten pounds with one hand at the time he was laid off, Arenviar has produced no evidence to show that this assessment was inaccurate, so it cannot be the basis for a regarded as claim. Arenivar also asserts that Swift erroneously stated that his restrictions included "avoid forceful and repetitive reaching away from the body." Arenivar offers no evidence or argument that this erroneous restriction constitutes a substantial limitation of a major life activity. Arenivar has thus failed to raise a fact question to defeat summary judgment on the substantial limitation of

lifting.

<u>Alba Barrios</u>

Barrios claims substantial limitations in the life activities of working, lifting and reaching. Barrios has a medical restriction of lifting no more than ten pounds. Under *Lowe,* this constitutes a facial substantial limitation and is sufficient to defeat summary judgment. Barrios also argues that her medical restriction limiting her to work below the chest level constitutes a substantial limitation on reaching. However, she offers little testimony or evidence showing a limitation on reaching. Since being laid off at Swift she has worked at a Taco Bell, where her job was to "stay in line, wrapping up whatever foods people order," as a waitress and delivering newspapers. In none of these positions has she described an inability to reach. While she states that it is harder for her to comb her hair, that she no longer can play with her children, and that she has more difficulty cleaning her house (so she relies more on her children for help) she does not attribute these limits specifically to difficulty reaching. This evidence is insufficient to raise a fact question in regard to her inability to reach, so she cannot succeed on a claim of actual disability or record of disability.  Barrios also fails to succeed on a regarded as claim, because she does not cite to any misperception by Swift of her condition.

<u>Gloria Campos</u>

Campos claims substantial limitations in the life activities of working and lifting. Her medical restrictions consist of a maximum five pounds in each hand and ten pounds for both hands. Under *Lowe*, this is sufficient to raise a fact issue to defeat summary judgment.

<u>Reynel Carmona</u>

Carmona claims substantial limitations in the life activities of working, lifting and reaching.

28

On August 29, 2001 Carmona was assigned the following temporary restrictions: "maximum ten pounds lift, push or pull, right arm. No work above shoulder (right arm). Occasional reaching (right arm). No crossed chest push or pull (right arm.)" On March 11, 2002, these were changed to "Maximum five pounds lift, push pull, right arm. Work with right arm below chest." These were further changed on April 3, 2003 to "avoid any lifting of greater than ten pounds," on either arm, and "avoid any work above shoulder level or work that requires excessive reaching away from the body, especially with the left side." Swift's letter to Carmona of March 17, 2003 placing him on medical leave stated that his permanent restrictions were "maximum 10 pounds, no greater than shoulder level work, occasional cross-reach," without reference to whether this restriction applied to one or both arms.

At the time he was placed on leave, Carmona's actual lifting restriction was five pounds on his right arm, but Swift seemed to regard him as having an overall lifting limit of ten pounds. Under *Lowe*, this ten pound limit is a facial limitation sufficient to defeat summary judgment.

Carmona offers little evidence to show a substantial limitation in reaching. The difficulties he describes – it is harder to comb his hair, he cannot reach out for objects that are "too far away" – do not constitute a substantial impairment.  I conclude that Carmona has not raised a fact question regarding his ability to reach.

Silvia Cruz

Cruz claims to be substantially limited in working, lifting and reaching. Cruz has a medical restriction limiting her to lifting no more than fifteen pounds. This is facially substantially limiting under *Lowe,* and is sufficient to defeat summary judgment. Cruz states in relation to reaching that her impairment makes it harder for her to comb her hair and that it takes longer for her to clean

her house. However, she can put away groceries, shop, reach her hands over her head, stretch her hands in front of her and to the side, empty her dishwasher, put away dishes and pass things around the dinner table. She has not raised a fact question to show that she is substantially impaired in reaching. While Cruz also claims Swift regarded her as disabled, she offers no evidence showing that Swift held an erroneous view of her impairments.

Jesus Estrada

Estrada claims substantial limitations in working and lifting. Estrada has a maximum ten pound lifting restriction, which is facially limiting under *Lowe* and sufficient to defeat summary judgment. Swift cites to Estrada's deposition testimony where he describes his construction work as including assisting in moving pipes that weigh up to forty pounds as evidence that he is not unable to lift. However, Estrada makes clear in his testimony that he worked with and assisted others in moving these pipes, so it is not entirely clear how much Estrada lifted in this job.

Swift contends that Estrada's deposition testimony that he no longer has the restrictions imposed by Swift shows that he is not disabled. Yet these same restrictions were the basis of Swift's decision to place Estrada on medical leave. If Estrada is in fact not unable to lift now, but he was at the time or Swift believed he was at the time, Estrada has a colorable claim that Swift either had a record of his disability or regarded him as disabled. In any case, he has alleged enough to defeat summary judgment.

Maria Isabel Flores

Flores claims substantial limitations in working, reaching and lifting. Flores has a medical restriction limiting her to lift no more than ten pounds. This is facially limiting under *Lowe* and sufficient to defeat summary judgment. While Flores' medical restrictions also show that she is

barred from above shoulder work, she provides no other evidence showing a substantial impact on her ability to reach. Flores brushes her teeth, combs her hair and showers. The most significant life impact she reports is that it takes her longer to do housework and her neck hurts if she moves too quickly. This is insufficient to establish a substantial limitation in reaching.  Flores does not show that Swift was erroneous in its description of her medical restrictions, so she cannot prevail on a regarded-as theory.  Flores also claims that Swift had a record of her disability, but since her lifting restriction does not constitute a substantial impairment, it cannot sustain a record of theory.

Jorge Martinez

Martinez claims substantial limitations in working, lifting, caring for himself and sexual relations. Martinez has a medical restriction barring any lifting at all, which is sufficient under *Lowe* to create a fact issue regarding a plaintiff's ability to lift. Martinez also contends that Swift falsely regarded him as being unable to lift when in fact he could lift up to ten pounds. Swift's physician, Dr. Bender, examined Martinez in January of 2002 and recommended a restriction of "no lifting." This is the same restriction stated in Swift's letter to Martinez placing him on medical leave. Martinez appears to rely on the opinion of Dr. Hughes that he only had an actual lifting limit of ten pounds. But Hughes' report cannot by itself lend credence to a "regarded as" theory against Swift. Hughes states that he examined Martinez July 23, 2002, but this report is not in the record. Martinez states that Swift relied on this report, but no reference to this report is in any Swift document. Even Hughes' own report of May 2005 is unclear as to whether he disagreed with Bender at the time or disagreed when he wrote the 2005 report. While the record contains a spreadsheet listing Martinez' restriction as lifting more than ten pounds, this minor inconsistency with the lay-off letter is insufficient to show that Swift erroneously regarded Martinez as unable to

31

lift, since under either restriction Martinez satisfies the facial test of *Lowe*.

Martinez also claims to be limited in the ability to care for himself.    He states that he cannot put on his socks, tie his shoelaces or put on his shoes, and he cannot wash his feet or his legs. When he showers, his wife has to clean him from the waist down. However, he also states that he can brush his teeth, comb and wash his hair, drive his car and use the telephone. He also testified that he can put on his socks and shoes, but he must do so without bending down. This evidence does not reflect a severe or substantial impairment; it is more like a modest inconvenience that Martinez is able to address by having family members help him. This is insufficient to establish a substantial impairment.

Martinez' support for his claim to a substantial impairment in sexual relations is a statement in his response to interrogatories stating that he can no longer have sex with his wife. Swift contends that an unsupported statement about a plaintiff's medical condition is insufficient to create an issue of material fact. However, the fact in dispute here is not Martinez' medical condition but how his medical condition has impacted his life. This is precisely the kind of evidence Swift contends throughout its briefs that the plaintiffs fail to offer, thus fatally undermining their claims. Here, Martinez provides precisely this kind of evidence, offered from personal experience. It is sufficient to create a fact issue to defeat summary judgment.

Maria McReynolds

McReynolds claims substantial impairments in working, lifting and reaching. McReynolds has a medically-imposed lifting restriction of fifteen pounds. Under *Lowe*, this is sufficient to defeat summary judgment. In support of her claim of a substantial limitation in reaching, McReynolds cites her additional medical restrictions of "Occasional reaching and bending. No

work above chest level."  However, McReynolds does not testify to any specific problems in reaching in her every day life. She is able to comb her hair, shower, shop, drive a car and cook, even though these activities may take longer. She is able to use a vacuum in her current job even though she cannot reach with her left arm "that much" and relies on her right.  Even her medical restriction states that her medical condition "would make her susceptible to recurrence of symptoms with jobs requiring a lot of reaching or overhead activities." (Emphasis added.) This suggests strongly that her impairment is modest and not substantial. McReynolds has failed to raise a fact issue to defeat summary judgment on the issue of a substantial impairment in reaching. While McReynolds also invokes the regarded as and record of theories, she has pointed to no evidence showing Swift's perception of her impairments were erroneous and she has not shown that Swift's record of her reaching restrictions shows a substantial impairment.

Ignacio Rangel

Rangel claims to be substantially limited in working, lifting and reaching. Rangel has a medical restriction of lifting no more than ten pounds, which, under *Lowe*, is facially substantially limiting and sufficient to defeat summary judgment.  Rangel's medical restrictions also include "No work below chest," and "No knife or hook work, either hand." However, Rangel does not provide any specific evidence of an inability to reach. He combs his hair, washes himself and dresses himself. Even after he had these restrictions, Rangel's job at Swift was to pull meat off of a conveyor belt. He returned to this job after being placed on medical leave. These facts do not demonstrate a substantial limitation in reaching, and do not reflect that Swift had a record of his disability. Rangel also does not identify any evidence showing that Swift's perception of his impairments was inaccurate, so he cannot sustain a regarded as theory of disability.

Juana Rosales

Rosales claims to be substantially limited in working and lifting, that Swift regarded her as substantially limited in reaching and that she has a record of being disabled.

Rosales has a medical restriction of lifting no more than five pounds in either hand, which under *Lowe* is facially substantially limiting and sufficient to defeat summary judgment. Rosales claims that Swift regarded her as unable to reach because it informed her she was placed on medical leave due to a permanent restriction of no above chest work (in addition to the lifting restriction) even though she did not at that time have a permanent restriction of no above shoulder work. The record shows that Dr. Wunder assigned her permanent restrictions in lifting, but not in reaching, even though both of plaintiff's expert witnesses, Dr. Hughes and Gail Pickett, refer to Wunder's permanent restriction of "no above shoulder work." Moreover, Rosales herself states in her response to interrogatory that she has a "no above chest level work" permanent restriction imposed by Dr. Wunder, and states in her deposition that at the time of her lay off she and Swift did not disagree as to her work restrictions. In this light, I do not see an issue of fact as to whether Swift was in error in considering that Rosales had this reaching restriction.

Rosales also alleges that she is actually impaired in reaching. Rosales states that she suffers pain when she reaches above her head, she cannot reach her arms to the side or in front of her above shoulder level, and she experiences pain when she tries to change a lightbulb or unload her dishwasher. At the same time, Rosales states she can brush her teeth, comb her hair, wash her hair, cook meals and also dress herself, although with some pain. Rosales' job at Swift prior to her lay off, and the job she has held at Swift since being recalled in April 2005, involved pulling fat from meat on a belt, and this job causes her some pain in her hand. Rosales is able to reach

sideways and in front of her, and is able to do some reaching above her head, even though it causes her some pain. This evidence shows a mild limitation and is insufficient to raise a fact issue on a substantial impairment in reaching.

Maria Tovar

Tovar claims to be substantially impaired in working, lifting and reaching. Tovar has a medical restriction that limits her lifting to ten pounds in her right arm, and also bars "use of the right arm above shoulder level." Swift's lay-off notice to Tovar states that her restrictions are "maximum ten pounds weight limit, no above shoulder work," but does not specify if this is for one or both arms. A ten pound weight limit in one hand is not necessarily bound by *Lowe,* where plaintiffs had an overall weight limit of fifteen pounds, but an overall limit of ten pounds is facially limiting under *Lowe.* While the record does not show Tovar to have any limit on her left arm at the time she was laid off, Swift's letter indicates that Swift regarded her as having an overall ten pound limit. This is sufficient to defeat summary judgment.

Tovar also claims to be substantially limited in reaching, but despite her medical restriction on above shoulder reaching Tovar is able to wash her hair, comb her hair and shop for groceries. While it causes her some pain, she is able to dress herself. This is insufficient to raise a fact issue on the ability to reach, and so cannot support a claim that Tovar has an actual disability or a record of a disability.

Antelmo Zunun

Zunun claims to have substantial limitations in working and lifting.  Zunun has a five pound lifting restriction on his right hand. He has no restrictions on his left hand, and the record contains no information on his overall weight lifting restriction. This restriction is therefore not

facially limiting under *Lowe*.  Zunun reports that his hand hurts when he shovels snow and that he no longer plays basketball. He can use light tools, such as a screwdriver, a pliers and a scissors. He can wash himself, comb his hair, dress himself, use the telephone and drive. This evidence is not sufficient to raise a fact question regarding Zunun's ability to lift, so cannot survive summary judgment under an actual disability or record of disability claim. Also, Zunun points to no evidence showing that Swift mis-perceived his restrictions, so he has no claim that he was regarded as disabled.

Maria Alva

Alva claims to be substantially limited in the major life activities of working and lifting, and that Swift regarded her as limited in reaching.  Alva has two sets of medical restrictions. The first, from an evaluation by Dr. Greg Reichart on April 10, 2003, consists of "limit lifting, pushing, pulling and carrying with the left arm to 10 pounds on an occasional basis, 5 pounds on a frequent basis. Limit reaching overhead with the left arm to an occasional basis." A second evaluation by Reichart of an injury to Alva's right arm on April 11, 2003 expanded her restrictions to her right arm, including among others, "limit unilateral lifting to 4 pounds," "limit floor to overhead to 10 pounds on an occasional basis," and "limit one handed carry on the right to 7 pounds occasionally, 3 pounds frequently." Swift states that these were Alva's permanent work restrictions as of April 11, 2003 and that Swift Human Resources Director Herrera accurately understood this. These restrictions are facially limiting under *Lowe*, and are sufficient to defeat summary judgment. While Alva states that Swift erroneously concluded that Alva could do no reaching with her left arm, the letter placing Alva on medical leave states accurately that her restriction is "Limit reaching overhead with left arm to occasional basis." There is no basis for her

36

claim that Swift's understanding of her reaching limit was in error. Alva cannot defeat summary judgment as to her substantial limitation in reaching.

Petrona Coreas

Coreas claims to be substantially impaired in the major life activities of working, lifting and reaching. Coreas has a medical restriction limiting her lifting to 20 pounds. While Swift contends that this restriction applies only to one arm (based on a statement in Coreas' response to interrogatories that "I believe these restrictions only affect my right arm,") both the medical report and Swift's lay-off notice to Coreas indicate a general lifting limit of 20 pounds without reference to either arm. For the purpose of considering this motion, I will assume that Coreas has an actual restriction of 20 pounds on both arms. This is not facially limiting under *Lowe*, so Coreas must put forward other evidence to show a substantial impairment in lifting to escape summary judgment. Coreas states that it is difficult for her to lift a gallon of milk, that she needs help when she does her laundry because she cannot load the baskets into her car and she cannot operate the kind of vacuum cleaner that hangs on her back. She also states that none of her household tasks require lifting more than 20 pounds.  She is able to perform the normal activities of daily life, and she worked while on medical leave as a janitor using a cart to collect trash. On this evidence, there is not a fact in dispute to defeat summary judgment as to a substantial impairment in lifting.

Similarly, although her medical restrictions include "work below chest level," she reports that she bathes herself, washes and combs her hair, brushes her teeth, dresses herself and cooks. The only specific impact of her reaching limitation is that she cannot reach up to clean the chalkboards in her janitorial job, and she feels shoulder pain when she combs or washes her hair. This is insufficient to show a substantial impairment in reaching, and so cannot sustain a "record

of" or actual disability claim. Also, Coreas presents no evidence showing that Swift's understanding of her impairments were incorrect, so she cannot sustain a "regarded as" claim.

Maria Estevez

Estevez claims to be substantially limited in the activities of working, lifting and reaching. Estevez has a medical restriction of lifting no more than ten pounds. This is a facial substantial impairment under *Lowe* and is sufficient to defeat summary judgment. Estevez also has a medical restriction limiting her to below waist level work, which Swift cited when it placed Estevez on medical leave. Estevez states in her response to interrogatories that it is painful or more difficult for her to get dressed and take a shower. However, in her deposition Estevez states that she can comb her hair, wash herself, do housework, get dressed without help, garden and cook. She states that she can lift her arms above her head, to the sides and in front of her. When asked what difficulties she has reaching, she responded, "I don't remember. I don't know." This record is insufficient to create a fact in dispute that Estevez has an actual impairment. Estevez' reliance on the "record of" and "regarded as" theories also fail. Swift's record of Estevez having a restriction of no above waist work is not by itself evidence of a substantial limitation on reaching. Estevez offers no evidence showing that Swift's view of her medical restrictions was erroneous when it placed her on medical leave.  Estevez thus fails to defeat summary judgment on the issue of reaching

Alfredo Pineda

Pineda claims to be substantially limited in the major life activities of working, lifting and reaching. Swift placed Pineda on medical leave of absence October 9, 2003, citing his medical restrictions of a maximum of ten pounds lifting with his left arm and no use of his left arm below

the chest level. This accurately reflects Pineda's permanent medical restrictions as of September 16, 2002, based on an injury May 20, 2002.   On June 14, 2003 Pineda suffered an additional injury. These resulted in an expanded set of temporary restrictions established June 26, 2003, which limit repetitive lifting to ten pounds, pushing and pulling to ten pounds, no reaching away from the body and "minimal bending/twisting at waist."  On June 18, 2004 Pineda reached maximum medical improvement on this second injury and the permanent restrictions imposed on him were "limiting lifting floor to waist 10 pounds occasionally. Limit lifting waist high and above to 20 pounds occasionally. Limit bending and twisting at the waist to an occasional basis. Limit frequent lifting floor to waist 5 pounds. Limit waist high and above lifting to 10 pounds frequently. Limit pushing, pulling and carrying to 20 pounds on an occasional basis, 10 pounds on a frequent basis."

Pineda argues that he qualifies as disabled because he had a record of an impairment and because Swift regarded him as impaired. While at the time Pineda was placed on leave his permanent lifting restriction was 20 pounds, above the facial threshold of *Lowe*, he also had a temporary restriction of ten pounds, under the *Lowe* threshold. Swift did not reference this lower figure in its leave notice, but there is no question that Swift was aware of this temporary restriction. This is sufficient to show that Pineda had a record of an impairment that satisfies *Lowe,* and so withstands summary judgment.

Pineda also claims a substantial limitation in reaching, and argues that Swift regarded him as completely unable to reach when his restriction was in fact limited to his left arm. However, Pineda does not show that this job-based reaching restriction establishes, by itself, a substantial impairment in reaching. The evidence he offers of his actual reaching impairment is also

unpersuasive. Pineda is able to stretch his arms out in front of him and reach his arms above his head. He can bathe himself, dress himself and comb his hair. He can tie his shoes if he is sitting down. Activities that require bending or squatting "take longer than before." Based on this evidence, Pineda fails to defeat summary judgment on reaching.

Carmen Luna

Luna claims to be substantially impaired in working, lifting and reaching. Her medical restrictions, based on a May 16, 2001 evaluation, are "Maximum 10 pounds lift, push, pull, left arm. No use above shoulder. No overhead work." These restrictions were broadened on May 21, 2001 to include "Maximum 15 pounds lift, push, pull. Occasional bend and twist and stairs." Swift cited both sets of restrictions when it placed Luna on medical leave.

Luna contends that Swift had a record of and regarded her as substantially impaired in lifting and reaching. Luna's 15 pound lifting restriction is facially substantially impairing under *Lowe*, and is thus sufficient to defeat summary judgment on a "record of" theory. Luna provides no evidence suggesting that this information was erroneous, so she has no claim under a "regarded as" theory. Luna's restriction on doing overhead work is not, by itself, evidence of substantial impairment in reaching. It is not clear if Luna is also arguing that she is actually impaired in reaching, but the record contains no references to any specific difficulty Luna has with reaching, and she states specifically that she can reach her arms above her head. Luna has not presented a fact to defeat summary judgment on this issue.

Patty Lehmkuhl

Lehmkuhl claims to be substantially impaired in working, lifting, standing/walking and squatting. Lehmkuhl has medical restrictions that include "maximum stand/walk of 40 minutes per

hour" and "maximum ten pounds lift, push or pull." Swift cited these restrictions, and others, when it placed Lehmkuhl on medical leave. Lehmkuhl's ten pound lifting restriction is facially limiting under *Lowe*, and sufficient to defeat summary judgment.

Lehmkuhl states that she was not substantially impaired in walking when she was placed on leave. While Swift had a record that Lehmkuhl was restricted from a job that required walking or standing more than 40 minutes per hour, this restriction, by itself does not sustain a "record of" theory.  Lehmkuhl seems to argue that this record was inaccurate in regard to walking, but since by itself it does not show a substantial impairment, it does not support a regarded as claim. For similar reasons, her claim in regard to standing fails. She does not contend that Swift's belief that she could not stand for more than forty minutes was inaccurate and this restriction by itself is not substantially limiting. Moreover, the sole impacts that she claims her inability to sit has on her life – she can cook but she has to sit while food is cooking, it takes her longer to wash dishes and she needs family members to help her shop and put away groceries – are not severe enough to constitute a substantial impairment.

It is unclear if squatting is a major life activity. Lehmkuhl cites to an unpublished Tenth Circuit opinion, *Prince v. Claussen,* No. 98-1064, 1999 WL 152282 at *5 (10th Cir. March 22, 1999), which states without explanation that squatting is a major life activity. Swift cites several district court cases from other jurisdictions to the effect that squatting is not a major life activity. Even assuming that squatting is a major life activity, Lehmkuhl does not identify any impacts to her life from her inability to squat, and so cannot defeat summary judgment on this issue.

Luis Ochoa

Ochoa claims substantial limitations in working and lifting. Ochoa has a medical restriction

that limits his lifting to "50 pounds occasionally, 25 pounds frequently and 10 pounds constant."
While the medical reports do not specifically state that these restrictions apply to only one hand,
they refer to an injury in his right wrist. Swift cited this restriction when it placed him on medical
leave of absence, and stated that these restrictions applied only to his right wrist. These
restrictions are greater than those described in *Lowe*, and are thus not facially substantially
limiting.

Ochoa asserts that due to his lifting impairment, he has difficulty with or experiences pain
when he uses his right hand to lift a gallon of milk, change a tire, or lift a full bucket. It is difficult
for him to lift up his children or "play with them when they use big toys." He can no longer "carry
all the bags at the supermarket" while grocery shopping. He has difficulty pushing a shopping
cart, and crawling on his hands, an activity necessary for his work as a service technician, is more
difficult.  Ochoa asserts that due to his injury, he relies on his left arm over 80% of the time to
perform any work or activity. Ochoa states that while he has difficulty with these tasks, he can
still do them. Ochoa can lift up to 50 pounds occasionally, and argued that at the time he was
placed on leave he could still perform his job, which involved the maintenance and servicing of
several large machines.   These facts are insufficient to raise a fact question in regard to a
substantial limitation in lifting.

These facts also do not support a "record of" theory, because Swift's record of Ochoa's
lifting impairment is not, by itself, a substantial limitation. Also, while Ochoa seems to allege that
Swift falsely understood Ochoa to be unable to work due to his impairment, he does not seem to
contest Swift's understanding of his lifting restriction. Ochoa contends that Swift perceived him
to have a ten pound lifting restriction in both hands, but Ochoa cites only to a Swift brief

42

referencing Ochoa's testimony that he needed help whenever he engaged in constant lifting of more than ten pounds, which is consistent with Ochoa's permanent restriction and with Swift's letter placing Ochoa on medical leave. Ochoa has not raised a fact question on whether Swift regarded him as substantially impaired in his ability to lift.

      2.      Reasonable Accommodation

Plaintiffs seek summary judgment on their claim that Swift failed to reasonably accommodate their disability. The ADA prohibits discrimination against individuals with a disability. 42 U.S.C. § 12112(a). Discrimination includes failure to make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual, unless the accommodation "would impose an undue hardship on the operation" of the employer. 42 U.S.C. § 12112(b)(5)(A), *Smith v Midland Brake, Inc.,* 180 F. 3d 1154, 1160-1161 (10th Cir. 1999.) Since the arguments underlying plaintiffs' claims and Swift's defenses on the question of reasonable accommodation are common to all plaintiffs, I consider them as a group.

The plaintiffs claim that Swift, when it placed plaintiffs on involuntary medical leave of absence, failed to reasonably accommodate their disabilities by not using an interactive process with the plaintiffs prior to placing them on medical leave, not reassigning them to other vacant positions for which they were qualified and not allowing them to keep the positions they held at the time.

      a.      Interactive Process

Determining the appropriate scope of a reasonable accommodation under the ADA generally involves an interactive process between the employer and the employee. *Templeton v. Neodata Services, Inc.,* 162 F.3d 617, 619 (10th Cir. 1998). "This process should identify the

precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). The interactive process typically involves notice to the employer of the employee's limitations, an assessment of whether the employee can remain in the current position and some effort to identify other positions to which the employee can be reassigned within the existing limitation. *Smith*, 180 F.3d at 1171-1172. The interactive process should begin as soon as the employer is notified of the employee's limitation and his desire to continue working for the employer. *Id.*

Swift does not deny that it was obliged to use an interactive process. Swift was aware that all of the plaintiffs were on medical restrictions. All of the employees believed that they were in jobs consistent with their abilities, since Swift placed them in these jobs after their injuries. While usually the first step in the interactive process is the employee notifies the employer, here it was the employer who first decided that the employees' impairments rendered them unable to do their jobs.  In this context, Swift's interactive obligations kicked in as soon as it had reason to believe that the plaintiffs were unable to perform their jobs. The record shows that Swift analyzed all of the positions at the meat plant and determined that 179 positions were affected by its new policy. At this point, Swift should have initiated an interactive process.

Plaintiffs contend that Swift did not do so. First, plaintiffs argue that the absence of any records documenting a reassignment, as required by Swift's Restricted Work, Return to Work policy, show that Swift did not even try to engage in reassignments. Second, Swift did not meet with the individual plaintiffs prior to placing them on leave. Swift concedes that it did not fill out the appropriate forms, but states that it fulfilled its obligations to engage in an interactive process by meeting numerous times with the union representing the plaintiffs prior to placing any

44

employee on medical leave, and by meeting individually with each plaintiff to discuss their job options.

The record shows that these individual meetings did not occur until after Swift concluded that no accommodation was possible and decided to place them on leave. For most plaintiffs, these discussions occurred only on the day plaintiffs were placed on leave. In a few cases, Swift provided plaintiffs with minimal notice, ranging from five days to two to three weeks, before placing them on leave. This kind of de minimus notice, provided only after Swift had already concluded that no reassignment was possible, does not satisfy the ADA interactive process.

However, plaintiffs do not dispute that Swift held several iterative meetings with the union representing the plaintiffs to discuss the status of plaintiffs' restrictions, whether they could stay in their current jobs and what jobs, if any, they could be reassigned to consistent with their medical restrictions. Swift, citing *Buskirk* , 307 F.3d at 170, contends that these meetings satisfy its interactive process obligations. I am not so sure. *Buskirk* states, without authority, that the employer's discussions with the employee's union representatives satisfied its duties to engage in an interactive process. *Id.* The union representative "took responsibility" for informing plaintiff of efforts to find him work consistent with his injury. *Id.* at 164. Here, plaintiffs allege, and Swift does not dispute, that they only first heard that there was some issue involving their ability to do their current job on the day they were placed on medical leave.  It is therefore unclear whether *Buskirk* controls this situation.

However, even if these union meetings do not meet Swift's interactive obligations, plaintiffs only win summary judgment on the issue of reasonable accommodation if they also show that Swift could have reasonably accommodated them through a reassignment or continuing in

45

their present position. *Smith,* 180 F.3d at 1174. I address that issue next.

> b.      Allowing Plaintiffs to Keep Current Positions or Providing Reassignments

Plaintiffs assert that Swift did not satisfy ADA's reasonable accommodation requirements because Swift did not offer plaintiffs the option of keeping their current positions, even though they were capable of performing these positions with or without an accommodation, and Swift did not reassign them to open positions for which they were qualified..

Swift states that they could not allow plaintiffs to retain their current positions for several reasons. Some plaintiffs occupied altered "light duty" positions to accommodate their injuries, some plaintiffs occupied non-essential make-work positions, and some employees held positions that had physical requirements inconsistent with their restrictions. Swift contends that its new policy required restricted employees to occupy light-duty positions for no more than six months. Since the plaintiffs all have permanent restrictions, allowing them to remain in these light-duty positions would amount to providing them permanent light duty assignments, which is beyond Swift's obligations under the ADA. *See Martin v. State of Kansas,* 190 F.3d 1120, 1133 (10th Cir. 1999).

Swift does not provide the actual study or assessment it used to identify which positions plaintiffs could no longer fill, or which plaintiffs occupied temporary, light duty or non-essential positions. Swift does provide a summary spread sheet showing the specific reason each of the 26 plaintiffs were placed on medical leave. Swift also provides the depositions of officials involved in the assessment and reassignment process, who testify that all of the plaintiffs were on restricted duty and could not be retained permanently in these positions, or had medical restrictions inconsistent with their positions. In some instances, Swift also relies on plaintiffs' own deposition

testimony that they were in light duty jobs when they were placed on leave.

Plaintiffs identify numerous flaws and inconsistencies in Swift's explanations. They provide documentation showing that their positions were in fact full time, regular positions, that they could do their jobs despite their restrictions and that their jobs were not light duty. However, giving every reasonable inference to the non-moving party (Swift, on this motion), Swift has presented a fact question to defeat summary judgment.

Plaintiffs similarly provide examples of vacant positions for which they were qualified at the time Swift placed them on medical leave, contending that Swift did not meet its obligation to reassign them to these vacant positions. *See Smith,* 180 F.3d at 1166-1167. Swift provides the testimony of Swift Vice President for Human Resources Doug Schult, who states that he and a team of Swift officials, including health and safety officials, union officials and plant managers, "[S]at down as a group and reviewed every single individual on that list. . . we looked at all possible jobs for people to do before we put them on leave." This testimony is sufficient to create a fact in dispute as to whether Swift fulfilled its obligation to provide reasonable accommodation.

It is So ORDERED that:

1) Swift's Motion in Limine to Exclude Certain Expert Testimony of Gail Pickett (Docket #96) is DENIED,

2) Swift's Renewed Motion in Limine to Exclude the Expert Testimony of John Hughes, M.D. (Docket # 208) is DENIED, in part and GRANTED, in part,

3) Swift's Motion to Strike Evidence Submitted in Support of Plaintiff's Motion for Partial Summary Judgment (Docket # 223) is DENIED,

4)  Swift's Motion for Summary Judgment (Docket # 100) is DENIED in part, and

GRANTED, in part, as follows:

a) Summary judgment is DENIED as to whether plaintiffs are substantially limited

in the major life activity of working, as to all plaintiffs,

b) Summary judgment is GRANTED as to whether plaintiffs are substantially

limited in the major life activity of lifting, as to plaintiffs Reyes, Meza, Arenivar,

Zunun, Coreas and Ochoa; and DENIED as to all other plaintiffs;

c) Summary judgment is DENIED as to whether plaintiff Martinez is substantially

impaired in the major life activity of sexual relations; and

d) Summary judgment is GRANTED as to all other major life activities for all

other plaintiffs; and

5) Plaintiffs' Motion for Partial Summary Judgment (Docket # 128) is DENIED.

**DONE and ORDERED,** this ___6th___ day of September, 2006 at Denver, Colorado.

          __s/Lewis T. Babcock_____
          United States District Chief Judge